UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ARON GRAY,

                        Plaintiff,

              - against -

NELSON GOMEZ, Individually,

                        Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-4746 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Aron Gray ("Plaintiff") brings this *Bivens* action against Defendant Nelson Gomez

("Defendant"), a police officer with the United States Park Police ("Park Police"). On May 23,

2023, Defendant moved under Federal Rule of Civil Procedure 12(c) for judgment on the

pleadings. For the reasons set forth below, the Court grants Defendant's motion.

## BACKGROUND[1]

On August 20, 2016, Plaintiff attended a family barbecue at 2200 Rockaway Parkway in

Brooklyn, New York. (Compl., Dkt. 1 ("Compl."), ¶¶ 8–9.) As the barbecue was winding down,

some attendees became engaged in an altercation. (*Id.* ¶ 10.) Plaintiff was not physically involved.

(*Id.* ¶ 11.) Plaintiff was standing nearby when an officer that Plaintiff believes was Defendant

approached Plaintiff from behind and tasered him in the back. (*Id.*) Plaintiff fell to the ground,

and was handcuffed and arrested. (*Id.* ¶ 12.)

The Park Police transported Plaintiff to the New York City Police Department's 69th

Precinct, where he was imprisoned before being transported to Brookdale Hospital Medical

---

[1] For purposes of deciding a motion for judgment on the pleadings, the Court accepts as
true all factual allegations in the complaint and construes them in the light most favorable to the
non-moving party. *Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2d Cir. 2018).

Center.   (*See id.* ¶¶ 13–14.)   Medical staff removed two taser prongs from Plaintiff's back. (*Id.* ¶ 15.)   Plaintiff was discharged from the hospital and again imprisoned at the 69th Precinct. (*Id.* ¶ 16.)

On August 21, 2016, Plaintiff was arraigned in Kings County Criminal Court on charges that Plaintiff alleges were based on false allegations sworn to by Defendant.   (*Id.* ¶ 17.) Specifically, Defendant swore that Plaintiff refused a lawful order, resisted arrest, and acted in a disorderly manner.  (*Id.* ¶ 18.)  Based on these allegations, Plaintiff was charged with obstruction of governmental administration, resisting arrest, and disorderly conduct.  (*Id.*)  The charges have since been dismissed.  (*Id.* ¶ 19.)

On August 18, 2019, Plaintiff initiated this action alleging deprivation of his constitutional rights and claiming physical injuries and emotional distress that he sustained as a result of Defendant's actions.  (*See id.* ¶ 20.)  Plaintiff asserts three causes of action against Defendant: (1) false arrest; (2) excessive force; and (3) violation of Plaintiff's right to a fair trial based on Defendant's alleged fabrication of evidence.[2]  (*Id.* ¶¶ 21–33.)  On March 31, 2020, Defendant answered the Complaint. (Dkt. 15.)

After discovery and settlement discussions, but before a trial date was set, the Honorable Lois Bloom, Magistrate Judge, permitted Defendant to file a pre-motion conference request in anticipation of filing a motion for judgment on the pleadings, and the undersigned approved the

---

[2] The Court refers to Plaintiff's "false arrest/unlawful imprisonment" claim as his "false arrest" claim. (*See* Compl. at 4.)  Additionally, Plaintiff's opposition brief refers to a "fabrication of evidence" claim.  (Pl.'s Opp'n to Def.'s Mot. to Dismiss, Dkt. 47 ("Pl.'s Opp'n"), at 9.)  The Court construes this language as a reference to Plaintiff's fair trial claim, which alleges that Defendant "created false evidence" against Plaintiff.  (Compl. ¶ 30; *see also* Def.'s Reply in Supp. of Mot. to Dismiss, Dkt. 46 ("Def.'s Reply"), at 8 n.2 (construing Plaintiff's argument as bearing on his fair trial claim).)

parties' joint proposed briefing schedule.  (*See* 3/01/2023 Docket Order; 4/24/2023 Docket Order.)

Defendant's motion was fully briefed on July 19, 2023.  (*See* Def.'s Reply at 10.)

## LEGAL STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings."  Fed. R. Civ. P. 12(c) ("Rule 12(c)").  "To survive a Rule 12(c)

motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim for

relief that is plausible on its face.'"  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d

Cir. 2010) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  Judgment on the

pleadings is appropriate only "if, from the pleadings, the moving party is entitled to judgment as a

matter of law."  *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.

(UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995); *Juster Assocs. v. Rutland*, 901 F.2d 266,

269 (2d Cir. 1990).

## DISCUSSION

### I.    *Bivens* Actions

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme

Court recognized an injured person's right to money damages if a federal official violates their

constitutional rights to be protected from unreasonable searches and seizures.  403 U.S. 388, 389

(1971).  Acknowledging that Congress passed a statute in 1871 that permitted such actions against

a *state* official—later codified at 42 U.S.C. § 1983—the Supreme Court reasoned,

> [W]e have here no explicit congressional declaration that persons injured by a
> federal officer's violation of the Fourth Amendment may not recover money
> damages . . . .  The question is merely whether petitioner, if he can demonstrate an
> injury consequent upon the violation by federal agents of his Fourth Amendment
> rights, is entitled to redress his injury through a particular remedial mechanism
> normally available in the federal courts.

*Id.* at 397.  The Supreme Court found that the plaintiff had stated a cause of action under the Fourth

Amendment and concluded that, as an "ordinary remedy for [the] invasion of [his] personal

interests in liberty," he could recover money damages for the injuries he had suffered.  *Id.* at 395–

97.

Those injuries, the plaintiff in *Bivens* alleged, arose from a warrantless arrest and search

imposed upon him by Federal Bureau of Narcotics agents.[3]  *Id.* at 389.  The plaintiff alleged that

the officers had used unreasonable force during his arrest, which was made without probable cause.

*Id.*  Observing that "[t]he very essence of civil liberty certainly consists in the right of every

individual to claim the protection of the laws, whenever he receives an injury," the Supreme Court

permitted these claims to go forward.  *Id.* at 397 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch)

137, 163 (1803)).

Despite the "essen[tial]" nature of *Bivens* relief, since then, the Supreme Court has only

twice implied other causes of action against federal officials under the Constitution: first, in *Davis*

*v. Passman*, 442 U.S. 228 (1979), for a sex discrimination claim under the Fifth Amendment,

brought by a former congressional assistant; and second, in *Carlson v. Green*, 446 U.S. 14 (1980),

for an inadequate-care claim under the Eighth Amendment, brought by a federal prisoner.  Beyond

those cases, the Supreme Court has carefully guarded the expansion of *Bivens* relief.

In *Ziglar v. Abbasi*, for example, the Supreme Court declined to extend *Bivens* relief to the

plaintiffs who had been arrested on immigration charges, because their claims bore "little

resemblance" to the facts of *Bivens*.  582 U.S. 120, 140 (2017).  Explaining its decision, the

---

[3] The Federal Bureau of Narcotics ("FBN") was the predecessor of the Drug Enforcement
Administration ("DEA").  *See Aaron v. Lowell*, 666 F. Supp. 3d 102, 128 (D. Mass. 2023).

Supreme Court set out a non-exhaustive list of differences "that are meaningful enough to make a given context a new one" when compared to *Bivens*:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 139–40.  However, the Supreme Court also cautioned that *Bivens* is "settled law," and that *Abbasi* was "not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose."  *Id.* at 134.

Most recently, in *Egbert v. Boule*, the Supreme Court crystallized the *Bivens* line of cases as presenting a two-step test to determine whether a plaintiff may bring an implied damages action against federal officers for the violation of a constitutional right.  596 U.S. 482, 490–93 (2022) (citing *Abbasi*, 582 U.S. at 135–38).  First, a court considers "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the [Supreme] Court has implied a damages action."  *Id.* at 492.  If the case does not present a "new context," an implied cause of action for damages is available.  *See id.* at 492.  Second, if a "new context" is presented, a court considers whether "'special factors' indicat[e] that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Id.* at 492 (quoting *Abbasi*, 582 U.S. at 136).  Further, as the Supreme Court "explained in [*Abbasi*]," a plaintiff must satisfy "the 'analytic framework' prescribed by the last four decades of intervening case law" since *Bivens*, *Davis*, and *Carlson*.  *Id.* at 501 (quoting *Abbasi*, 582 U.S. at 139).

The Supreme Court's understanding of a "new context" is broad: "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new."

*Abbasi*, 582 U.S. at 139; *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). For example, a "new context" may arise when it involves "a 'new category of defendants.'" *Hernandez*, 589 U.S. at 102 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). Thus, although the Supreme Court has "not '"cast doubt"'" on the vitality of *Bivens* claims within the "'"common and recurrent sphere of law enforcement"'" in which it arose," the Supreme Court made clear that "[its] watchword is caution." *Egbert*, 596 U.S. at 491, 495 (quoting *Hernandez*, 589 U.S. at 101). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* at 492 (quoting *Hernandez*, 589 U.S. at 102).

## II.      Analysis of Plaintiff's *Bivens* Claims

Under *Egbert*'s two-step framework to analyze *Bivens* claims, the Court first considers whether Plaintiff's claims arise in a "new context." *See id.* at 491–92. Because the Court finds that Plaintiff's claims present a "new context" for purposes of the *Bivens* analysis, the Court next analyzes whether "special factors" foreclose Plaintiff's claims. *See id.* at 492. The Court concludes that special factors foreclose Plaintiff's claims and that Defendant is entitled to judgment as a matter of law.

### A.      "New Context"

Applying the "'analytic framework' prescribed by the last four decades of intervening case law" since *Bivens*, *Davis*, and *Carlson*, the Court finds that Plaintiff's claims present a "new context." *See Egbert*, 596 U.S. at 501 (quoting *Abbasi*, 582 U.S. at 139). However, the Court does not arrive at this holding easily.

Many facets of Plaintiff's case closely resemble the facts of *Bivens*, and arguably place this case "in the heartland of *Bivens*" jurisprudence. *See Snowden v. Henning*, 72 F.4th 237, 244 (7th Cir. 2023), *petition for cert. filed*, No. 23-976 (Mar. 4, 2024). For instance, accepting Plaintiff's

allegations as true for purposes of this motion, several of the potentially "meaningful" differences

that the Supreme Court has enumerated present no obstacle to relief here. *See Egbert*, 596 U.S. at

492 (citing *Abbasi*, 582 U.S. at 139). First, compared to *Bivens*, the rank of the officers involved

is the same: Plaintiff asserts his claims against a line-level law enforcement officer. (*See*

Compl. ¶¶ 6–33); *cf. Bivens*, 403 U.S. at 389–90. Second, at least with respect to Plaintiff's false

arrest and excessive force claims, the Fourth Amendment rights at issue are the same as those in

*Bivens*.[4] (*See* Compl. ¶¶ 21–28); *Bivens*, 403 U.S. at 389–91. Third, as in *Bivens*, there was ample

judicial guidance at the time Defendant confronted Plaintiff as to how a Park Police officer such

as Defendant should respond to the situation alleged by Plaintiff. *See Bivens*, 403 U.S. at 389–90;

*Hicks v. Ferreyra* ("*Hicks II*"), 64 F.4th 156, 168 (4th Cir. 2023) (recognizing that Park Police

officers in *Bivens* action "confronted nothing more than established principles of Fourth

Amendment law with extensive judicial guidance regarding the right of individuals to be free from

unjustified, warrantless seizures"), *cert. denied*, 144 S. Ct. 555 (2024); *Patterson v. United States*,

999 F. Supp. 2d 300, 315 (D.D.C. 2013) (Jackson, J.) (noting, in pre-*Egbert Bivens* case against

Park Police officers, that "[t]here is a significant body of jurisprudence that addresses . . . First and

Fourth Amendment violations in the context of arrests . . . , and these cases outline the parameters

of permissible police action in circumstances that are similar to those at issue here"); *Bloem v.*

*Unknown Dep't of the Interior Emps.*, 920 F. Supp. 2d 154, 166 (D.D.C. 2013) (finding Fourth

Amendment rights "clearly established" for purposes of qualified immunity analysis in action

---

[4] With respect to Plaintiff's fair trial claim, presumably under the Sixth Amendment, it is clear that that claim is "meaningful[ly] different" from the causes of action presented in *Bivens*, *Davis*, and *Carlson*, as clarified by *Egbert*. *See Egbert*, 596 U.S. at 492 (internal quotation marks omitted); *Bivens*, 403 U.S. at 389–90; *Carlson*, 446 U.S. at 16; *Davis*, 442 U.S. at 231; *see also Sigalovskaya v. Braden*, No. 15-CV-34 (LDH), 2023 WL 6385761, at *5 (E.D.N.Y. Sept. 29, 2023) ("Courts have recognized that claims involving the fabrication of evidence present a new *Bivens* context." (collecting cases)).

against Park Police officer).[5]   And fourth, both in *Bivens* and here, the defendants were operating

under a law enforcement mandate.  *See Bivens*, 403 U.S. at 392; *District of Columbia v. United*

*States*, 67 Fed. Cl. 292, 326 (Fed. Cl. 2005) ("The United States Park Police has a law enforcement

mission that greatly resembles the mission of the District's Metropolitan Police, except that the

Park Police officers focus primarily upon federal property.").

The Court notes an additional similarity: as in *Bivens*, Plaintiff's arrest in this case was

warrantless.  (*See* Compl. ¶¶ 10–12); *Bivens*, 403 U.S. at 389.  "[T]he decision to issue a warrant

involves different aspects of police work, including 'information-gathering and case-building

activities,' which are different from the warrantless apprehension, detention, and other issues

presented in *Bivens*."  *Hicks II*, 64 F.4th at 167 (quoting *Annappareddy v. Pascale*, 996 F.3d 120,

136 (4th Cir. 2021)).  In this way, Plaintiff's case is unlike post-*Egbert* cases that have found a

new *Bivens* context where the plaintiff was arrested pursuant to a warrant.[6]   *See, e.g.*, *Lewis v.*

---

[5] Defendant raised the affirmative defense of qualified immunity in his answer to the
Complaint, (Answer, Dkt. 15, at 4), but not in the instant motion.  (*See generally* Def.'s Mem. of
Law in Supp. of Mot. to Dismiss, Dkt. 45-1 ("Def.'s Mem."); Def.'s Reply.)

[6] Apart from the presence of a warrant, some other courts have found the location of a
plaintiff's arrest to be a "meaningful" difference for purposes of *Bivens*.  Post-*Egbert*, several
circuit courts have addressed this issue and reached divergent outcomes.  The Seventh Circuit, in
approving a Fourth Amendment *Bivens* claim following an arrest in a hotel lobby, reasoned that
location is not a meaningful difference compared to *Bivens* because, "[h]otel or home, warrant or
no warrant—the claims here and in *Bivens* stem from run-of-the-mill allegations of excessive force
during an arrest."  *Snowden*, 72 F.4th at 247.  The Fourth Circuit has held similarly.  *See Hicks II*,
64 F.4th at 168 ("[C]ourts, including this [c]ourt, have applied '*Bivens* to Fourth Amendment
claims arising from police traffic stops like this one.'  The officers in the present case confronted
nothing more than established principles of Fourth Amendment law with extensive judicial
guidance regarding the right of individuals to be free from unjustified, warrantless seizures."
(citation omitted) (quoting *Hicks v. Ferreyra* ("*Hicks I*"), 965 F.3d 302, 311–23 (4th Cir. 2020))).
The Ninth Circuit, however, has denied *Bivens* relief where a plaintiff sued for an incident on
public lands, although the court did not explain why the location was material to the *Bivens*
analysis with respect to plaintiff's excessive force claim.  *See Mejia v. Miller*, 61 F.4th 663, 668
(9th Cir. 2023).  And, while the Tenth Circuit has held that "a new agency . . . create[s] a new

*Westfield*, 640 F. Supp. 3d 249, 253–54 (E.D.N.Y. 2022) (finding relevant, in *Bivens* action alleging excessive force against Deputy U.S. Marshals, that defendants "acted under a different 'legal mandate' than the defendants in *Bivens*. . . .   While the officers in *Bivens* were attempting to conduct a warrantless arrest, . . . the defendants here were executing an arrest warrant[.]"), *aff'd sub nom. Lewis v. Bartosh*, No. 22-3060-pr, 2023 WL 8613873 (2d Cir. 2023) (summary order); *Cuney v. Choi*, No. 22-CV-154 (BKS) (CFH), 2022 WL 16743984, at *4 (N.D.N.Y. Nov. 7, 2022) ("Plaintiff's claim that [d]efendant exceeded the scope of warrants authorizing the search of electronic data is meaningfully different from the warrantless search and arrest in *Bivens*, and presents a new context.").

Nonetheless, as *Egbert* counsels, "our watchword is caution."  *Egbert*, 596 U.S. at 491 (quoting *Hernandez*, 589 U.S. at 101).  Thus, the Court is ultimately guided by the Second Circuit's reasoning in two recent summary orders affirming the district courts' findings that the plaintiffs' *Bivens* claims presented a "new context."[7]  Those orders, while non-precedential, suggest that Plaintiff's case should be resolved in the same fashion.  *See Cohen v. Trump*, No. 23-35, 2024 WL 20558, at *2–3 (2d Cir. Jan. 2, 2024) (affirming dismissal of *Bivens* claims alleging unlawful seizure, based on "new context" presented by lawsuit against, among others, "officers and agents of the [Bureau of Prisons] and the [Probation and Pretrial Services Office]"); *Lewis*, 2023 WL 8613873, at *2 (affirming dismissal of *Bivens* claim alleging excessive force, based on "new context" presented by suit against Deputy U.S. Marshals); *see also Sigalovskaya*, 2023 WL

---

*Bivens* context," it has "agree[d]" that the "location of the arrest" has "no legal significance in an excessive-force case." *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1357–58 (10th Cir. 2024).

[7] Although the Second Circuit's Local Rule 32.1.1 advises that summary orders "do not have precedential effect," the Circuit has yet to issue binding precedent that defines a "new context" that forecloses *Bivens* relief.

6385761, at *5 (stating that "the difference in agency is now sufficient, after [*Egbert*], to create a

new context"); *Diaz Cruz v. United States*, No. 20-CV-891 (EK) (SJB), 2023 WL 2574756, at *3

(E.D.N.Y. Mar. 20, 2023) (claims against ICE agent "present[ed] a new [*Bivens*] context").  While

not explaining their application of the two-part test from *Egbert* with precision, the panels in *Cohen*

and *Lewis* both relied on the different agencies and federal officers involved,[8] as well as the

existence of an alternative remedy, in declining to infer a *Bivens* cause of action in those cases.

*See Cohen*, 2024 WL 20558, at *2–3;[9] *Lewis*, 2023 WL 8613873, at *1 (explaining that, "'[i]f a

claim arises in a new context'—such as if it involves a 'a new category of defendants'—or if there

is an 'alternative remedial structure,' a *Bivens* remedy is generally 'unavailable'" (quoting *Egbert*,

596 U.S. at 492–93)).

In *Lewis*, the panel endorsed the district court's reasoning in finding that the plaintiff's

*Bivens* claims were foreclosed:

---

[8] Despite this authority, the Court notes that *Egbert* made no distinction between the defendant-agency involved in *Bivens*, i.e., the FBN (now DEA), and the defendant-agency involved in *Egbert*, i.e., Customs and Border Protection.  *See Egbert*, 596 U.S. at 512 (Sotomayor, J., concurring in the judgment in part and dissenting in part) ("[I]f the 'new context' inquiry were defined at such a fine level of granularity, every case would raise a new context, because the Federal Bureau of Narcotics no longer exists.").

[9] With respect to the defendants' identities, the panel in *Cohen* seemed to distinguish between the federal officials involved in *Cohen* and federal agents involved in *Bivens* on the basis of both rank and agency:

> [W]e cannot infer a *Bivens* cause of action for [plaintiff's] claims because there is reason to hesitate before extending *Bivens* to this new context. [Plaintiff] sues a former President, a former Attorney General of the United States, [Federal Correctional Institution] Otisville's warden, and officers and agents of the [Bureau of Prisons] and [Probation and Pretrial Services]. [Plaintiff's] Fourth Amendment claim involves "new categor[ies] of defendants" that were not contemplated in *Bivens*.

*Cohen*, 2024 WL 20558, at * 2.

> The district court concluded that several of the factors recognized in *Egbert* precluded a *Bivens* remedy here, including the professional identity of [the defendants] (Deputy Marshals, rather than federal narcotics agents) and the existence of an alternative remedial scheme through which the Directors of the Marshals Service must investigate reported misconduct.

*Lewis*, 2023 WL 8613873 at *1–2 ("We . . . agree with the district court that *Egbert* precludes [plaintiff's] *Bivens* claims.").

Here, Plaintiff's *Bivens* claims similarly are against an officer from a different agency than in *Bivens*, and Plaintiff similarly had other avenues for obtaining relief than through a *Bivens* action at the time of the alleged incident.  (Def.'s Mem. at 7–9; Def.'s Reply at 7–10); *see Lewis*, 2023 WL 8613873, at *2; *see also infra* Discussion § II.B.[10]  Thus, following the guidance provided by *Cohen* and *Lewis*, the Court finds that Plaintiff's *Bivens* claims present a "new context."  The Court therefore proceeds to analyze whether "special factors" foreclose Plaintiff's claims.

### B.      "Special Factors"

"[I]f a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert*, 596 U.S. at 492 (quoting

---

[10] The Court considers, in its "new context" analysis, "the risk of disruptive intrusion by the Judiciary into the functioning of other branches" and "the presence of potential special factors that previous *Bivens* cases did not consider," *Abbasi*, 582 U.S. at 140, such as the existence of an "alternative remedial structure," *see Egbert*, 596 U.S. at 492–93 ("While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy. . . .  [A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'").  The presence of an "alternative remedial structure," therefore, effectively does double duty in *Bivens* actions, since it is a potentially meaningful difference to consider in deciding whether the plaintiff's claims present a "new context" and then, as discussed below, makes a second appearance as a potential "special factor" militating against the survival of a *Bivens* claim.  *See Hernandez*, 589 U.S. at 124 n.3 (Ginsburg, J., dissenting) (noting that "[t]hese considerations overlap with the special-factors inquiry" necessary upon a finding of a "new context").

*Abbasi*, 582 U.S. at 136). "[Where] Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 498. "[E]ven if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy[,]'" the "question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

Defendant argues that three "special factors" foreclose Plaintiff's claims: (1) the Park Police's complaint procedures; (2) the Federal Tort Claims Act; and (3) potential "systemwide" consequences that would result from extending *Bivens* to Plaintiff's claims. (Def.'s Mem. at 12–16.) The Court concludes, again based on the guidance provided by *Egbert* and this Circuit's summary opinions, that the existence of the Park Police's complaint procedures *alone* forecloses Plaintiff's claims.

As a preliminary matter, Defendant contends that the Park Police "allows any aggrieved individual to submit a complaint, which is then investigated by [the Park Police's] Internal Affairs Unit." (Def.'s Mem. at 12.) Although the Court credits Plaintiff's argument that Defendant "has not pointed to any evidence that" such complaints are "a remedial process directed at investigating [Park Police] officer misconduct,"[11] (Pl.'s Opp'n at 10)—because *Bivens* "is concerned solely with deterring the unconstitutional acts of individual officers," *Egbert*, 596 U.S. at 498 (quoting *Malesko*, 534 U.S. at 71)—the Court ultimately "cannot second-guess" that remedial structure "by

---

[11] Indeed, the notion that "a nonbinding administrative investigation process, internal to the agency and offering no meaningful protection of the constitutional interests at stake, constitutes an alternative remedy that forecloses *Bivens* relief blinks reality." *Egbert*, 596 U.S. at 520 (Sotomayor, J., concurring in the judgment in part and dissenting in part).

superimposing a *Bivens* remedy" where it does not already exist, *see id.*  Indeed, in *Egbert*, the Supreme Court found that "the consideration of [the plaintiff's] grievance against [the defendant-agent] secured adequate deterrence and afforded [the plaintiff] an alternative remedy." *Id.*

"If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* at 492 (quoting *Hernandez*, 589 U.S. at 102).  Here, the Park Police's internal grievance procedures provide that single reason.  The Court therefore does not address whether the Federal Tort Claims Act or potential "systemwide" consequences would foreclose *Bivens* relief for Plaintiff's claims.[12]

**CONCLUSION**

For the reasons explained above, the Court grants Defendant's motion for judgment on the pleadings.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 30, 2024
       Brooklyn, New York

---

[12] "[I]t [is] crystal clear that Congress views [Federal Tort Claims Act ("FTCA")] [actions] and *Bivens* as parallel, complementary causes of action." *Carlson*, 446 U.S at 20.  However, a lawsuit under the FTCA is not available to a plaintiff alleging strictly constitutional violations. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477–78 (1994) (holding that "[a] constitutional tort claim is not 'cognizable' under [the FTCA, 28 U.S.C.] § 1346(b)"); *Mayes v. United States*, No. 15-CV-7155 (KPF), 2018 WL 1274029, at *10 (S.D.N.Y. Mar. 5, 2018) ("[T]he FTCA's waiver of sovereign immunity does not cover claims for constitutional violations[.]"), *aff'd*, 790 F. App'x 338 (2d Cir. 2020) (summary order).